IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:14-CV-00260-FL

| | | |
|---|---|---|
| CALVIN TYRONE NORTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| JEFFREY ROSIER, in his individual capacity, | ) | |
| | ) | |
| Defendant.[1] | ) | |

This matter is before the court on plaintiff's motion for summary judgment (DE 63), defendant's motion for summary judgment (DE 61), and defendant's motion to strike (DE 71). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, this court denies plaintiff's motion, denies in part and grants in part defendant's motion for summary judgment, and denies defendant's motion to strike.

## STATEMENT OF THE CASE

On November 10, 2014, plaintiff filed this civil rights action, pro se, against defendant, Administrative Chief of Police of the City of Whiteville, North Carolina, and against former defendant City of Whiteville, North Carolina. (DE 1). In his unverified complaint, plaintiff alleged that defendant conducted an illegal traffic stop of plaintiff in South Carolina, in violation of the Fourth Amendment to the United States Constitution, the Law of the Land Clause of the North Carolina Constitution, and the South Carolina common law prohibiting false imprisonment. (Id.).

---

[1] This court constructively has amends the caption of this order to reflect the dismissal of the previously named defendant City of Whiteville. (See DE 22, 23, and 25).

On December 11, 2014, former defendant City of Whiteville filed a motion to dismiss. (DE 11). On March 5, 2015, the court granted former defendant City of Whiteville's motion to dismiss, dismissing the case in its entirety. (DE 16, 17). The court held, in relevant part, that the alleged traffic stop is "so de minimus that it fails to amount to a constitutional violation or cognizable § 1983 claim against Chief Rosier individually"; that plaintiff does not allege "official policy, practice, or custom of the City of Whiteville such that it meets the requirements for bringing a cognizable § 1983 claim against a local government"; and that the court declines to exercise supplemental jurisdiction over plaintiff's remaining state-law claims. (DE 16 at 5).

Plaintiff appealed the court's March 5, 2015, ruling, and the United States Court of Appeals for the Fourth Circuit affirmed in part, vacated in part, and remanded the case by unpublished per curiam opinion, affirming the court's dismissal of plaintiff's claim against former defendant City of Whiteville but holding that "[t]he temporary detention of an individual during a traffic stop, even if only for a limited time or purpose, constitutes a Fourth Amendment seizure," thereby reinstating plaintiff's § 1983 and pendant state law claims against defendant. (DE 22 at 3; DE 23).

On February 16, 2017, plaintiff filed the instant motion for summary judgment. (DE 63). In support of his motion, plaintiff filed defendants' responses to plaintiff's first set of interrogatories and request for production of documents (DE 63-2) and attachments to defendants' response to discovery requests (DE 63-3). On March 13, 2017, defendant filed a response in opposition to plaintiff's motion for summary judgment. In support of his response, defendant filed an amended declaration ("Rosier Amend. Decl.") (DE 64-1) and record on appeal in case no. 10-CVD-152, Tiffanee Annette Norton v. Calvin Tyrone Norton, (N.C. Ct. App. 2017) (DE 64-2).

In the mean time, on February 15, 2017, defendant filed his instant motion for summary judgment. (DE 61). In support of his motion, defendant filed a declaration ("Rosier Decl.") (DE 61-1); Whiteville Police Department Complaint Report (DE 61-2); Letter Re: Departmental Complaint (DE 61-3); Letter to Investigator Kelley and attached documents (DE 61-4); Probationary Certification (DE 61-5); and General Certification (DE 61-6).

On April 20, 2017, plaintiff filed a response in opposition to defendant's motion for summary judgment. (DE 68). In support of his response, plaintiff filed a declaration. (DE 68-1). On May 4, 2017, defendant filed a reply to plaintiff's response, challenging in part the legal sufficiency of plaintiff's filed declaration, and in support of his motion, filed an affidavit declaration of Sally Mann (DE 69-1) and affidavit declaration of Jonathan Medford (DE 69-2). On May 16, 2017, plaintiff filed a sur-reply, entitled "plaintiff's reply response to Rosier's reply," and in support of his motion, filed a second declaration ("Norton Decl.") (DE 70-1), declaration of Connie Robinson ("Robinson Decl.") (DE 70-2), and emails (DE 70-3).

On May 25, 2017, defendant filed a motion to strike plaintiff's sur-reply (DE 71), and on June 5, 2017, plaintiff filed his response to defendant's motion to strike (DE 72). This matter was reassigned to the undersigned district judge on July 28, 2017.

## STATEMENT OF THE FACTS

Except as otherwise noted below, the undisputed facts are as follows.

Plaintiff's complaint relates to a traffic stop allegedly conducted by defendant of plaintiff's vehicle on September 4, 2014. Defendant is the Administrative Chief of Police for Whiteville, who at all relevant times, was not certified as a law enforcement officer in the state of North Carolina. (Rosier Decl. ¶¶ 19-20; DE 61-5; DE 61-6; Norton Decl. ¶¶ 12, 17, 19). Defendant owns a

condominium located in the Myrtle Beach area. (Rosier Decl. ¶ 13).

According to plaintiff, around 5:45 p.m. on the afternoon of September 4, 2014, defendant Rosier in a purple unmarked car followed plaintiff's car from the City of Whiteville towards Highway #9 in Loris, South Carolina, near North Myrtle Beach, when defendant Rosier turned on blue lights and pulled plaintiff over for an unlawful traffic stop. (Id. ¶¶ 3, 12). Plaintiff asserts at the time of the alleged incident plaintiff was violating no South Carolina laws, and there were two people in the car with him and two people following the car, including Connie Robinson, who witnessed the incident. (Id. ¶¶ 4-6). The stop allegedly lasted about 6 minutes. (Robinson Decl. ¶ 4).

Defendant asserts, by contrast, that he was present and working at the Whiteville Police Department on the afternoon of September 4, 2014 until he left to attend a rotary club meeting in Whiteville in the late afternoon or early evening,[2] and he has not performed any traffic stop of any vehicle at any time during his service as Administrative Chief and Chief of Police for Whiteville, North Carolina. (Rosier Decl. ¶¶ 12, 17-19).

Following the alleged stop, plaintiff asserts that he went to the police department in Whiteville and confirmed the car that stopped him belonged to defendant and filed a complaint against defendant at the Whiteville police department. (Norton Decl. ¶¶ 14-16). The North Carolina Department of Justice, Training and Standards Division notified defendant of the complaint filed by plaintiff. (Rosier Amen. Decl. ¶ 2; DE 61-2). Defendant was contacted by Training and Standards Investigator Judy Kelly and requested to provide information to the division regarding

---

[2]Both Sally Mann (DE 69-1) and Jonathan Medford (DE 69-2) submitted affidavits attesting that Rosier was at the Whiteville Rotary Club meeting, starting at 6:00 p.m., on September 4, 2014, and therefore would not have sufficient time to have made a traffic stop as alleged and then attend the meeting.

his whereabouts on the date and time period of the alleged traffic stop, which defendant did, including letters from two witnesses, Sally Mann and Jonathan Medford, attesting that defendant was at a rotary club meeting starting at 6:00 p.m, and a rotary club attendance sheet indicating defendant was present.  (Rosier Decl.¶¶ 11-12; DE 61-2; DE 61-4).

Plaintiff asserts that because defendant was not certified as a law enforcement officer in the state of North Carolina, defendant has impersonated a sworn officer multiple times.  (Norton Decl. ¶¶ 10, 19).  Defendant asserts that when he was initially hired in March 2014, he believed his education, training, experience, and certification as a law enforcement officer in the state of Maryland would allow him to be certified as a law enforcement officer in the state of North Carolina.  (Rosier Decl. ¶ 3).  Defendant then discovered he had to complete a state certified Basic Law Enforcement Training ("BLET") program, met with District Attorney Jonathan David for education and instruction on the proper exercise of duties, and thereafter complied with the applicable requirements and restrictions until he was certified, acting as Administrative Chief of Police during this time.   (Id. ¶¶ 4-5).  On or about June 19, 2015, defendant received from the Criminal Justice Education and Training Standards Commission a probationary and general certification allowing defendant to be qualified for appointment as a law enforcement officer in the state of North Carolina.  (Id. ¶¶ 19-20; DE 61-5; DE 61-6).

## DISCUSSION

A.    Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district

court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based

6

on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.     Analysis

1.     Defendant's Motion to Strike

Before reaching the merits of the case, the court will first address defendant's motion to strike plaintiff's sur-reply. Defendant filed motion for summary judgment, plaintiff responded in opposition including a personal declaration, and defendant submitted a reply, in part challenging the legal admissibility of the previously attached personal declaration of plaintiff. Plaintiff then submitted a sur-reply, comprising a second response in opposition and attaching another declaration by plaintiff and an additional declaration by Connie Robinson. Defendant moves to strike plaintiff's sur-reply, including attached declarations, arguing that plaintiff violated Local Rule 7.1 when he submitted the sur-reply without the court's permission.

Local Rule 7.1 discourages submission of replies and makes no provision for sur-replies. Courts generally allow a party to file a sur-reply "only when fairness dictates based on new arguments raised in the previous reply." DiPaulo v. Potter, 733 F. Supp. 2d 666, 670 (M.D.N.C. 2010); see also Estate of Richard Myers ex rel. Myers v. Wal–Mart Stores, Inc., No. 5:09–CV–549–FL, 2011 WL 1366459 at *1 n. 1 (E.D.N.C. Apr. 11, 2011) ("the court generally allows a party to file a sur-reply only when necessary to respond to arguments raised for the first time in the reply").

Although plaintiff did not ask leave of the court to file his sur-reply in violation of the local

rules, in consideration of plaintiff's pro se status and defendant's challenge to admissibility of plaintiff's declaration, the court will consider the sur-reply and attached declarations in the court's decision.[3]  See Huggins v. N.C. Dep't of Admin, No. 5:10-CV-414-FL, 2011 WL 5439091, at *1 n.1 (E.D.N.C. Nov. 9, 2011) (noting pro se status and allowing filing of sur-reply).

Defendant argues that if the court does not strike plaintiff's sur-reply, the court "should allow [defendant] the opportunity to respond to the new issues raised therein." (DE 71-1 at 3).  The court declines defendant's request to allow further response to the new issues raised in plaintiff's sur-reply, because plaintiff's sur-reply appears to restate previous arguments set forth by plaintiff and appears to have been submitted in an effort to address failures to meet plaintiff's burden of proof as pointed out by defendant in defendant's reply.

2.      Plaintiff's Motion for Summary Judgment

Plaintiff has failed to meet his burden of informing this court of the basis for his motion and identifying those portions of the evidence and record that he believes demonstrate there is no genuine issue of material fact.  For example, plaintiff has failed to point to admissible evidence that demonstrates the essential elements of his claims.  Rather, plaintiff relies on his own bare assertions and inapplicable or inconclusive answers from defendant to plaintiff's discovery inquiries.  In sum, plaintiff has failed to show there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.  Consequently, plaintiff's motion for summary judgment must be DENIED.

---

[3]The court is referring to the cited attachments as declarations, rather than affidavits, because although they state they are made under penalty of perjury and state they are made under oath with a notary's signature, the printed name of the notary and notary seal is lacking.  See 28 U.S.C. § 1746 (declarations under penalty of perjury have same effect as sworn affidavits).

3.    Defendant's Motion for Summary Judgment

a.    Fourth Amendment Claim

The temporary detention of an individual during a traffic stop, even if only for a limited time or purpose, constitutes a Fourth Amendment seizure. <u>Whren v. United States</u>, 517 U.S. 806, 809-10 (1996).  Because a routine traffic stop is more like an investigative detention than a custodial arrest, the court evaluates a traffic stop under the test set forth in <u>Terry v. Ohio</u>, 392 U.S. 1 (1968). <u>United States v. Green</u>, 740 F.3d 275, 279 (4th Cir.).  Under this inquiry, the officer's decision to stop the vehicle must be both "justified at its inception" and adequately "limited both in scope and duration." <u>United States v. Digiovanni</u>, 650 F.3d 498, 506-07 (4th Cir. 2011).  A police officer is entitled to initiate a <u>Terry</u> stop only where it is "supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity." <u>United States v. Foster</u>, 634 F.3d 243, 246 (4th Cir. 2011) (internal quotation marks omitted).

Defendant argues that "[a]ll probative evidence proffered in this case, including Rosier's own valid declarations, the Training and Standards Investigation, and the Declarations of Sally Mann and Jonathan Medford, support Rosier's contention that he was attending the meeting and could not have initiated a traffic stop in Horry County, South Carolina as alleged."  (DE 69 at 3).  However, on summary judgment, the court must accept as true plaintiff's first-hand account of events that defendant pulled plaintiff over for a traffic stop on September 4, 2014, around 5:45 p.m. and that plaintiff was not at that time violating any South Carolina laws that would have justified such a stop and that the stop lasted at most 6 minutes.  If a fact-finder determines that defendant pulled plaintiff over for an unlawful traffic stop, without more, plaintiff will have established a technical violation of the Fourth Amendment.

However, even if true, the stop was not accompanied by actual injury. Consequently, plaintiff is entitled to, at most, an award of nominal damages for the violation. See Randall v. Prince George's County, Md., 302 F.3d 188, 209 n. 30 (4th Cir.2002) (noting that "in the § 1983 context[,] . . . being seized for a minimal amount of time does not constitute an actual injury warranting compensatory damages"); Norwood v. Bain, 166 F.3d 243, 245 (4th Cir.1999) (en banc) (concluding that plaintiffs who were unconstitutionally searched and seized for a brief period of time were only entitled to nominal damages); Price v. City of Charlotte, 93 F.3d 1241, 1256 (4th Cir.1996) (same); see also Carter v. Baltimore Cty., Maryland, 95 F. App'x 471, 480–81 (4th Cir. 2004) (reversing grant of summary judgment for Fourth Amendment claim regarding unlawful traffic stop, but finding plaintiff "is entitled to, at most, an award of nominal damages for the violation").[4]

Therefore, defendant is not entitled to summary judgment regarding plaintiff's claim against defendant for violation of his rights under the Fourth Amendment to the United States Constitution.

b.    Law of the Land Clause of the North Carolina Constitution Claim

North Carolina Constitution, Article I, Section 19 states:

No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land. No person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin.

In Corum, the North Carolina Supreme Court held that an individual whose state constitutional rights have been abridged has a direct action for monetary damages under the North

---

[4]The court rejects defendant's request to dismiss plaintiff claims because plaintiff is "inherently untrustworthy," citing issues regarding plaintiff's mental state as asserted by plaintiff in other court proceedings. (DE 64 at 5; DE 64-2). It is well settled that the court may not, at summary judgment, discount viable, material evidence on the ground that it was offered by a plaintiff with a troubled past. See e.g., Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir.2004) (the court "may not make credibility determinations" in reviewing the record).

Carolina Constitution if there is no adequate remedy provided by state law. <u>Corum v. University of North Carolina</u>, 330 N.C. 761, 783-87(1992); <u>see also</u> <u>Rousselo v. Starling</u>, 128 N.C. App. 439, 447-48 (1998) (upholding grant of summary judgment, finding adequate state law remedy of common law claim for false imprisonment and therefore no direct violation of North Carolina State Constitution under Article I, sections 19 and 20); <u>Edwards v. City of Concord</u>, 827 F. Supp. 2d 517, 520 (M.D.N.C. 2011) (intentional tort claims for false arrest and assault and battery "protect the same constitutional rights to be free from improper restraint and excessive force [plaintiff] seeks to vindicate with his alternative direct constitutional claim")..

Here, plaintiff has alleged the intentional tort claim for false imprisonment under South Carolina common law, which serves to protect the same constitutional rights to be free from improper restraint plaintiff seeks to vindicate with his alternative North Carolina direct constitutional claim. Thus, this claim provides him "the possibility of relief under the circumstances" and "opportunity to enter the courthouse doors and present his claim." <u>Craig ex rel. Craig v. New Hanover Cty. Bd. of Educ.</u>, 363 N.C. 334, 340 (2009). Therefore, defendant's motion for summary judgment regarding plaintiff's claim for violation of plaintiff's rights under the North Carolina Constitution, Article I, Section 19, is GRANTED.

c.      South Carolina False Imprisonment Claim

In South Carolina, "[t]he essence of the tort of false imprisonment consists of depriving a person of his liberty without lawful justification." <u>Law v. S.C. Dep't of Corr.</u>, 368 S.C. 424, 440 (2006) (citing <u>Jones v. City of Columbia</u>, 301 S.C. 62 (1990)). To prevail on a claim for false imprisonment, plaintiff must establish: 1) the defendant restrained plaintiff, 2) the restraint was intentional, and 3) the restraint was unlawful. <u>Id.</u>; <u>see also</u> <u>Jones by Robinson v. Winn-Dixie</u>

Greenville, Inc., 318 S.C. 171, 175 (Ct. App. 1995) ("False imprisonment may be committed by words alone, or by acts alone or by both, and by merely operating on the will of the individual, or by personal violence, or by both"); Watson v. Adams, No. CV 4:12-3437-BHH, 2017 WL 1001122, at *13 (D.S.C. Mar. 15, 2017) (denying summary judgment on false imprisonment claim, finding defendant had no reasonable suspicion to conduct the traffic stop, and stating that defendant's "conduct during the traffic stop [that lasted minutes] makes clear that he intended to question [plaintiff] and prevent him from leaving the scene").

Again, on summary judgment, the court must accept as true plaintiff's version of events that defendant pulled him over for a traffic stop on September 4, 2014 around 5:45 p.m. and that plaintiff was not at that time violating any South Carolina laws that would have justified such a stop. Therefore, defendant's motion for summary judgment regarding plaintiff's claim against defendant for violation of his rights under South Carolina common law false imprisonment is DENIED.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment (DE 63) is DENIED, defendant's motion for summary judgment (DE 61) is DENIED IN PART and GRANTED IN PART, and defendant's motion to strike (DE 71) is DENIED. The parties are DIRECTED to confer and file within **21 days** from the date of this order a joint status report informing the court of the parties' position(s) regarding: 1) whether an additional period of discovery is needed on the issues of damages, 2) whether the parties seek to pursue alternative dispute resolution prior to trial, including court-hosted settlement conference, and proposed dates for conduct of same; and 3) three proposed alternative dates for trial, including specification of estimated trial length.

SO ORDERED, this the 29th day of September, 2017.

LOUISE W. FLANAGAN
United States District Judge