IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:14-CV-00260-FL

| | | |
|---|---|---|
| CALVIN TYRONE NORTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| JEFFREY ROSIER, in his individual capacity, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on plaintiff's motions in limine (DE 117, DE 119) as well as defendant's motion in limine (DE 122). Responses have been filed to all motions, and the court heard argument at final pretrial conference January 22, 2019. For the following reasons, plaintiff's first motion is granted in part and denied in part, plaintiff's second motion is granted, and defendant's motion is granted in part, with a part remaining for decision at trial. Additional evidentiary issues also are addressed herein.

**BACKGROUND**

Jury trial is set to commence on February 11, 2019, on plaintiff's claim that defendant conducted an illegal traffic stop of plaintiff in South Carolina on September 4, 2014, in violation of the Fourth Amendment to the United States and South Carolina common law prohibiting false imprisonment. The court incorporates herein by reference the statement of the case and statement of undisputed facts from its September 29, 2017, order on the parties' cross motions for summary judgment. Norton v. Rosier, No. 7:14-CV-00260-FL, 2017 WL 4399194, at *2 (E.D.N.C. Sept. 29, 2017).

Plaintiff seeks to exclude evidence of plaintiff's "physical and mental health diagnoses and treatment" as well as evidence of plaintiff's previously-filed lawsuits. Defendant seeks to exclude evidence not related to the alleged traffic stop incident including evidence of defendant's alleged "crimes, wrongs, or other acts" and "character."

At pretrial conference on January 22, 2019, the court heard oral argument on the instant motions, ruled on certain portions of each motion and took under advisement remaining portions which are herein addressed.

## DISCUSSION

A.   Standard of Review

Federal Rule of Evidence 402 provides that "[r]elevant evidence is admissible," and "[i]rrelevant evidence is not admissible." Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Thus, "[r]elevancy . . . exists only as a relationship between an item of evidence and a matter properly provable in the case." Id. Advisory Committee Note. In addition, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time." Fed. R. Evid. 403.

Rule 404(b) provides as follows:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character . . . . This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

2

B.  Analysis

   1.  Plaintiff's Motion in Limine to Exclude Evidence of Physical and Mental Health (DE 117)

Defendant seeks to "impeach Norton's credibility by offering proof that the court (Judge Fairly) specifically found that Norton was feigning a medical condition in a conscious attempt to mislead the court. This is proof of Norton's reputation for dishonesty, which is plainly admissible under Rule 608." (DE 130 at 2).[1]

Specifically at issue is defendant's proposed exhibits 30-33 and 41, all of which have been submitted to the court. These proposed exhibits concern a case filed in January 2010 before the North Carolina Court of Appeals against Norton by his then wife for child support and divorce. A child support order was entered in that case which Norton sought to modify in 2016. In the course of so doing, Norton submitted to the court numerous medical records detailing his inability to work and indicating limited capacity to proceed in court for both physical and mental reasons. Additionally, Norton appeared before the court in an apparently physically and mentally limited state.

Notwithstanding the records offered and plaintiff's appearance, the court held Norton "and his evidence [as] not credible," relying on the multiple and articulate filings plaintiff made to the court as well as video evidence taken ten days earlier in which Norton was able to move and speak without difficulty. On March 21, 2016, the presiding judge denied Norton's request for guardian ad litem as well as his request for modification of the child support order.

Thereafter, plaintiff filed complaint with the Judicial Standards Commission against the state

---

[1] At pretrial conference, the court dismissed as moot the majority of plaintiff's motion at DE 117 where defendant represented at oral argument and in briefing that he "is not seeking to admit evidence of any actual diagnosis or condition." (DE 130 at 2).

3

court judge, which complaint defendant in the present case seeks to introduce, as well as the North Carolina Court of Appeals record on appeal, including the multiple medical records filed by Norton. In main, however, defendant seeks to introduce a later March 27, 2018 order by the state court judge, wherein the court committed Norton to Columbus County jail for civil contempt for failure to pay child support wherein the court held as follows:

> [T]he court has had an opportunity to observe the witnesses in this matter and to assess their credibility and in this regard court finds that [Norton's] testimony was a consistent effort at obfuscation and evasion, was wracked with inconsistencies and contained explanations of circumstances that would require the court to suspend its understanding of present-day business realities to accept . . . .

Turning now to the applicable rule of evidence, Rule 608(b) provides in relevant part that

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
> (1) the witness; or
> (2) another witness whose character the witness being cross-examined has testified about.

"Rule 608 authorizes inquiry only into instances of misconduct that are clearly probative of truthfulness or untruthfulness, such as perjury, fraud, swindling, forgery, bribery, and embezzlement." United States v. Leake, 642 F.2d 715, 718 (4th Cir.1981) (citation omitted). However, because "[a] witness' credibility may not be impeached by extrinsic evidence of specific instances of conduct[,] . . . [a] cross-examiner may inquire into specific incidents of conduct, but does so at the peril of not being able to rebut the witness' denials." United States v. Bynum, 3 F.3d 769, 772 (4th Cir.1993). The purpose of Rule 608(b) "is to prohibit things from getting too far afield—to prevent the proverbial trial within a trial." Id.

To the extent defendant seeks to introduce the exhibits at issue to attack plaintiff's character

4

for truthfulness, defendant is not allowed so to do pursuant to Rule 608(b)'s prohibition of extrinsic evidence. However, to the extent defendant seeks to cross-examine Norton regarding the state trial court judge's finding that plaintiff was not credible, as stated above, Rule 608(b) does not prevent this kind of inquiry. See United States v. Dawson, 434 F.3d 956, 957–59 (7th Cir. 2006) ("[T]he decision whether to allow a witness to be cross-examined about a judicial determination finding him not to be credible is confided to the discretion of the trial judge; it is not barred by Rule 608(b), which, to repeat, is a rule about presenting extrinsic evidence, not about asking questions."); United States v. Cedeño, 644 F.3d 79, 82–83 (2d Cir. 2011) (setting forth a list of factors a district court should consider when making this determination: "(1) whether the prior judicial finding addressed the witness's veracity in that specific case or generally; . . . (2) whether the two sets of testimony involved similar subject matter"; (3) "whether the lie was under oath in a judicial proceeding or was made in a less formal context"; (4) "whether the lie was about a matter that was significant"; (5) "how much time had elapsed since the lie was told and whether there had been any intervening credibility determination regarding the witness"; (6) "the apparent motive for the lie and whether a similar motive existed in the current proceeding"; and (7) "whether the witness offered an explanation for the lie and, if so, whether the explanation was plausible.").

Here, although the state judge's finding was limited to his specific case, he also described Norton's "consistent effort at obfuscation and evasion," indicating an ongoing and significant concern with his untruthfulness. Additionally, plaintiff's untruthfulness occurred during multiple recent judicial proceedings before the state judge while plaintiff was under oath and concerned a matter of great significance, plaintiff's physical and mental ability to stand trial, physical and mental ability to be employed, and the state of plaintiff's finances to determine whether he could afford to

5

pay child support. In fact the only applicable factor set out in the Second Circuit's test that weighs in clear favor of plaintiff is the fact nothing in that case concerning child support touches on the issues presented in the present case, although arguably factor six stated above also weighs in plaintiff's favor in that the motive to lie to avoid child support payments, is also wholly lacking in the present case, presuming such was plaintiff's motivation.

Rule 608(b) thus permits, in the court's discretion, cross-examination of plaintiff regarding the credibility determination made by the state court judge. The main and almost only issue in the present case is whether plaintiff or defendant is telling the truth; one is and one is not. Credibility is key to this determination, and evidence of plaintiff's character for truthfulness paramount. While there is clear potential for delay and waste of time if questioning about these facts is unduly extended, cross-examination can be limited as necessary without having to be prohibited.

In sum, plaintiff's motion in limine is GRANTED IN PART to the extent that defendant seeks to introduce defendant's proposed exhibit 30-33 and 41 as evidence of plaintiff's character for untruthfulness in contravention to Rule 608(b) and is DENIED IN PART to the extent that defendant seeks to inquire of plaintiff on cross-examination as to the state judge's credibility determination of plaintiff.[2]

---

[2] Defendant additionally argued at pretrial conference that one of the above-referenced documents, defendant's proposed exhibit 30, should be allowed under a different rationale. This exhibit is plaintiff's complaint to the Judicial Standards Commission concerning Judge Farley which contains plaintiff's argument also presented to Judge Farley concerning plaintiff's "several health issues of a life time chronic Bi-polar emotional or mental disorder," in addition to describing the medications plaintiff was taking at that time and referencing the medical records submitted by plaintiff in support of his claim. Not included, however, is information concerning Judge Farley's credibility determination, only plaintiff's subjective belief that Judge Farley had treated plaintiff incorrectly. The main import of this exhibit appears to be evidence of an actual diagnosis or condition, which defendant has stated he is not seeking to admit. (See DE 130 at 2). Additionally, the court finds statements made by plaintiff in this exhibit to be of limited relevance under Rule 401 and of significant unfair prejudice under Rule 403 and thus inadmissible.

2. Plaintiff's Motion In Limine to Exclude Evidence of Other Lawsuits (DE 119)

At minimum, plaintiff has filed the following cases in federal court specifically naming defendant individually and in his official capacity in addition to the present case which was filed November 10, 2014: <u>Norton v. City of Whiteville et al</u>, 7:16-CV-300-FL (filed August 17, 2016), <u>Norton v. Tabron, et al</u>, 7:16-CV-56-FL (filed March 30, 2016), <u>Norton v. Tabron, et al</u>, 7:16-CV-21-BO (filed February 5, 2016). Defendant seeks to introduce evidence of these other lawsuits as evidence of plaintiff's bias against defendant.[3]

In support of admission, defendant cites <u>Koch v. Koch Indus., Inc.</u>, 2 F. Supp. 2d 1385, 1392 (D. Kan. 1998) as example of a court that has admitted evidence of plaintiff's seven prior lawsuits against defendants and related parties to show bias and as relevant to plaintiff's credibility. In that case the court allowed introduction of the lawsuits as probative of "revealing the degree of intensity of his alleged animosity towards his brothers," the defendants in that case. <u>Id.</u> The court noted "plaintiffs' concerns that the evidence of these other lawsuits will be used to paint the plaintiff as a 'litigious character' who files lawsuits devoid of merit are overstated and maybe even misplaced. The court does not understand the defendants as intending to use this evidence for this objectionable reason." <u>Id.</u> Thus the court recognized the highly prejudicial nature of this type of evidence. As stated by the Second Circuit, "[a plaintiff's] litigiousness may have some slight probative value, but that value is outweighed by the substantial danger of jury bias against the chronic litigant. The trial court has a duty to prevent exploitation of this prejudice . . . ." <u>Outley v. City of New York</u>, 837

---

[3] At pretrial conference, the court granted in part plaintiff's motion at DE 119, ordering evidence of plaintiff's litigiousness against other defendants and in state court barred including a "gatekeeping order" entered against plaintiff in North Carolina County Superior Court, Case No. 12-CVS-438, (DE 12-1), which prohibits plaintiff from filing suit in any North Carolina state court without first appending an affidavit from a licensed attorney certifying that the attorney reviewed the complaint and obtaining leave of the Senior Resident Superior Court Judge to file in the forum county.

F.2d 587, 592 (2d Cir. 1988) (citation omitted).

Repeatedly filing lawsuit against one defendant could indicate motive or bias under Rule 404(b) and may establish something other than plaintiff's propensity to file lawsuits against defendant. However, the other lawsuits filed by plaintiff are not similar enough nor close enough in time to be relevant in the current lawsuit. Unlike in Koch, where the seven suits filed by plaintiff against his family all concerned family property disputes, here none of the suits filed by plaintiff against defendant are similar in claims brought or facts alleged. Also, plaintiff brought the present suit significantly in advance of all others against defendant. Finally, the probative value of this evidence is not substantially outweighed by its potential for unfair prejudice. That plaintiff, after filing the present lawsuit, years later filed three other lawsuits against defendant as well as multiple other defendants may, as stated above, indicate limited motive or bias against defendant, but does not outweigh the highly prejudicial nature of this type of evidence.

Accordingly, plaintiff's motion in limine is GRANTED.

3. Defendant's Motion in Limine to Exclude Prior Acts, Expert Testimony and Damages Evidence (DE 122)

Plaintiff seeks to introduce five exhibits to which defendant objects. Addressing the first four exhibits, three are photos of defendant in uniform, in khakis and polo wearing a badge and gun, and in suit sitting at a desk, and the fourth exhibit is a copy of defendant's business card. Plaintiff argued at hearing that these exhibits are relevant to identification of defendant, and defendant appeared to concede as much, stating defendant only objects to the evidence being presented as to whether and when defendant was certified as a law enforcement officer and whether or when defendant acted allegedly inappropriately, for example wearing a badge and gun, while defendant

8

was not properly certified.[4]

The court cannot determine conclusively at this time how these exhibits will be used at trial and thus declines to definitively rule on this issue until at such time counsel introduces these exhibits.

The fifth exhibit plaintiff seeks to enter over defendant's objections is a 2002 City of Whiteville Patrol Order ("2002 Patrol Order"). Some relevant background is necessary. On August 1, 2018, defendant produced to plaintiff in response to a subpoena the 2002 Patrol Order which articulated the City's policy and practice when conducting traffic stops specifically with respect to plaintiff, instructing that should a traffic stop call for issuance of a citation to plaintiff or for his arrest, the officer is to "notify the Chief"—along with the District Attorney and the Lieutenant who authored the memo—"immediately." (DE 103-2 at 11). On August 2, 2018, plaintiff conducted a deposition of defendant, who testified that "he first learned of the Patrol Order in the couple of weeks prior to his deposition." (See DE 108 at 3). Defendant testified the order entered by the previous chief of police was rescinded when the former chief left office and that no one in the department knew of its existence in September 2014. (DE 123 at 3).

Evidence regarding the 2002 Order from a previous police chief has no probative value and is not relevant to the question of whether defendant, the current police chief, initiated a traffic stop of plaintiff's vehicle in South Carolina, nor is the order relevant to the issue of damages or to proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

---

[4] At hearing, the court denied in part defendant's motion at DE 122, allowing evidence from plaintiff's expert witness regarding nationally-recognized police practices including with regard to traffic stops, and dismissing as moot defendant's motion concerning evidence related to punitive damages in view of its decision to bifurcate trial.

Accordingly, defendant's motion in limine in that part regarding the 2002 Patrol Order is GRANTED, while the court holds in abeyance decision on remaining part.

4. Additional Disputes

a. Nontestifying Witnesses

Plaintiff has testified that two witnesses were with him in the car at the time of the alleged traffic stop. Counsel represented at hearing and final pretrial conference that plaintiff noticed both for deposition and then withdrew the notices because she learned these witnesses "were going to be difficult" and in order to focus on more significant matters. Defendant thereafter noticed for deposition both of these witnesses, had notices duly served, and then the witnesses failed to appear to testify. Defendant did not, however, take further action to inform the court of the witnesses' failure to appear prior to the pretrial conference nor determine the reason for the witnesses' unavailability.

The main dispute centers on whether the court reporter's certified transcripts evidencing failure of each witness to appear for deposition may be admitted into the record, to support a "missing witness" jury instruction along lines of the second paragraph below, in supplement to the first paragraph of the "witness" instruction, roughly in the form requested by plaintiff:

> The law does not require any party to call as witnesses all persons who may appear to have some knowledge of the matters at issue at this trial. Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.
>
> However, if a party fails to call a person as a witness who has knowledge about the facts in issue, and who is reasonably available to the party, and who is not equally available to the other party, then you may infer that the testimony of that person is unfavorable to the party who could have called the witness and did not.

Plaintiff argues he would be prejudiced if such an instruction is given and that the witnesses

10

were equally available or at least equally unavailable to both parties. Defendant argues he would be prejudiced if such an instruction is not given, arguing that the witnesses were in the car with plaintiff on the day in question and are more available to plaintiff than to defendant.

If a witness is "equally available to either party" a missing witness jury instruction is "inappropriate." Dunlap v. G. & C. Towing, Inc., 613 F.2d 493, 497 (4th Cir. 1980) (citing United States v. Kenney, 500 F.2d 39, 40 (4th Cir. 1974); Kean v. Commissioner of Internal Revenue, 469 F.2d 1183, 1187-8 (9th Cir. 1972)). "The determination of the question of equal availability depends upon all the facts and circumstances bearing upon the witness's relation to the parties and not merely upon his physical presence at trial or accessability for service of a subpoena." Kean v. Comm'r, 469 F.2d 1183, 1188 (9th Cir. 1972).

> The Fourth Circuit has held in the criminal context in unpublished opinion that
>
> [T]he denial of a missing witness instruction need not always be accompanied by the barring of all government comments on the witness' absence. The Seventh Circuit has written, "[i]n a close case, it may be appropriate to allow a party to comment in argument on the significance of a witness' absence, even where there is insufficient evidence of unavailability to warrant a missing witness instruction" . . . . The reasons for McQuade's unavailability were sufficiently ambiguous so that, although it might have been no abuse of discretion not to have permitted the comment, the judge did not abuse his discretion by permitting it.

United States v. Odom, No. 90-5074, 1991 WL 97480, at *6 (4th Cir. June 11, 1991) (citing United States v. Keplinger, 776 F.2d 678, 702-3 (7th Cir.1985)). In that case, however, the court commented that the witness in question appeared to not have been equally available to both sides where the witnesses consented to one interview with defense counsel and visited defendant in jail before evading the government's service.

Here the only evidence the court has before it as to availability is that plaintiff chose not to depose the witnesses because she heard the witnesses were "going to be difficult" and thereafter the

11

witnesses did not respond to defendant's deposition notices. It appears neither party had any contact with either witness during the course of litigation, although presumably the witnesses are known to Norton in that they were in his car on the day in question. Plaintiff through counsel argued at hearing that the witnesses' failure to appear for deposition confirms plaintiff was indeed correct that the witnesses were "going to be difficult" and that, as such, they were unavailable to both parties.

As noted, there is some support in law for the proposition that in argument a party may comment on a missing witness. It could follow then that defendant in this case should be allowed to introduce the two transcripts. The court leaves open that question as well as the propriety of any missing witness instruction. The court will revisit this issue at trial as needed.

        b.        North Carolina Criminal Justice Training Standards Commission File

The parties have engaged in an ongoing dispute over the relevance and admissibility of a file compiled by defendant's witness Judith A. Kelly who conducted an investigation of defendant on behalf of the North Carolina Criminal Justice Education and Training Standards Commission. As stated by defendant:

> [O]n December 21, 2016, Defendant served Plaintiff with a copy of the complete file (379 pages of documents) produced by the N.C. Criminal Justice Training Standards Commission. This file included copies of Chief Rosier's North Carolina law enforcement certification documents from the Training Standards Commission, as well was copies of Chief Rosier's certification and training records (covering a time period back to 1983, when Rosier was first certified in Maryland) from his prior law enforcement work in the State of Maryland. The file also included the witness statements and other documents assembled by the Training Standards Commission in the course of their investigation into Mr. Norton's allegations against Chief Rosier.

(DE 89 at 2-3).

Defendant seeks to admit this file over plaintiff's objections premised on hearsay, relevance, and authentication. Defendant has submitted the file to the court as defendant's proposed exhibit

12

one and has represented that some of the documents contained within the file have already been excluded by the court in previous order, some documents are defense exhibits to which plaintiff has not objected, and some documents are pleadings from this case reproduced multiple times which defendant does not anticipate offering as exhibits except for the complaint itself.

The court has reviewed the file in question and is unable at this time to determine admissibility without knowing which particular parts of the file defendant seeks to introduce and for what reason. Accordingly, the court directs defendant to submit to the court which portions of this file defendant seeks to admit in advance of trial for its further review. The court will thereafter determine at trial admissibility of those portions as needed.

**CONCLUSION**

Based on the foregoing, plaintiff's motion in limine (DE 117) is GRANTED IN PART and DENIED IN PART, plaintiff's motion in limine (DE 119) is GRANTED, and defendant's motion in limine (DE 122) is GRANTED IN PART, with a part remaining to be decided together with issues concerning the two men who failed to attend depositions noticed by defendant. Defendant is DIRECTED to submit to the court what portions of defendant's proposed exhibit one defendant seeks to introduce at trial not later than **February 5, 2019.**

SO ORDERED, this the 28th day of January, 2019.

LOUISE W. FLANAGAN
United States District Judge